1

1                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF OHIO
2                     WESTERN DIVISION

3

4                       - - -

5  UNITED STATES OF AMERICA,  .  CASE NO. 1:05-CR-137-2

6             Plaintiff,    .  COURT OF APPEALS NO. 08-3603

7  - v -              .  STATUS CONFERENCE

8  GARY MYLES,           .  Wednesday, January 31, 2007

9           Defendant.   .  9:35 a.m.

10  . . . . . . . . . . . . . .  Cincinnati, Ohio

11

12

13             TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE MICHAEL R. BARRETT, DISTRICT JUDGE
14

15

16  For the Plaintiff:   Timothy D. Oakley, Esq. (AUSA)
                   Kenneth L. Parker, Esq. (AUSA)
                   United States Attorney's Office
17                 221 East Fourth Street, Suite 400
                   Cincinnati, Ohio  45202
18

19  For the Defendant,   Christopher L. Jackson, Esq.
  Gary Myles:          111 Park Place
20                 Suite 101
                   Covington, Kentucky  41011
21

22  For the Defendant,   John T. Keller, Esq.
  Kofi M. Cooper:     2345 Kemper Lane
23                 P.O. Box 6129
                   Cincinnati, Ohio  45206
24

25

```
 1   For the Defendant,    Paul M. Laufman, Esq.
     Jeffrey Pitts:        Laufman, Jensen & Napolitano, LLC
 2                         30 Garfield Place, Suite 750
                           Cincinnati, Ohio   45202
 3

 4   For the Defendant,    Raymond L. Katz, Esq.
     Derrick Knox:         The Law Office of Raymond L. Katz
 5                         114 East Eighth Street
                           Cincinnati, Ohio   45202
 6

 7
     For the Defendant,    Bryan R. Perkins, Esq.
 8   Gino Freeman:         119 East Court Street
                           Cincinnati, Ohio   45202
 9

10
     For the Defendant,    William P. Whalen, Esq.
11   Randy Martin:         Kevin T. Bobo, Esq.
                           810 Sycamore Street
12                         Cincinnati, Ohio   45202

13

14   For the Defendant,    Charles W. Isaly, Esq.
     Bethany Notestine:    22 West Ninth Street
15                         Cincinnati, Ohio   45202

16

17   For the Defendant,    Christine Y. Jones, Esq.
     Reno Lattimore:       114 E. Eighth Street
18                         Cincinnati, Ohio   45202

19

20   Law Clerk:            Grace M. Royalty, Esq.

21   Courtroom Deputy:     Barbara Crum

22
     Court Reporter:       Maryann T. Maffia, RMR, Official
23

24

25
```

```
 1              (Proceedings held in open court at 9:45 a.m.)
 2         THE COURT:  It seems we are one person short.  It's
 3    Mr. Whalen's client.  I guess they are trying to -- where is
 4    Bill?
 5       I guess they are trying to find out why they didn't bring
 6    him up, Bill.  Should we get started on this?
 7         MR. WHALEN:  Yes.  I'll waive his presence for this,
 8    Your Honor.
 9         THE COURT:  Okay.  Is there one person that can speak
10    for the group of defense attorneys generally, and then if
11    people have individuals things to add, they can do that?
12         MR. KATZ:  I would defer to Mr. Laufman, Your Honor.
13         MR. LAUFMAN:  We have de facto volunteering, Judge.
14         THE COURT:  Why don't each of you guys keep your
15    voice up, enter your appearance for the record and the client
16    for whom you are appearing, okay?  And we'll just start with
17    Mr. Laufman.
18         MR. LAUFMAN:  Thank you, Judge.
19         THE COURT:  Just enter your appearance first so we
20    know who is speaking.
21         MR. LAUFMAN:  Paul Laufman on behalf of Jeffrey Pitts
22    speaking, at least for now, for myself on behalf of anyone who
23    would care to adopt my comments --
24         THE COURT:  Let everybody else just go around the
25    room.  Mr. Keller is here on behalf of?
```

```
 1              MR. KELLER:  Miss Kofi Cooper, Your Honor.

 2              THE COURT:  All right.

 3              MR. JACKSON:  Chris Jackson on behalf of Gary Myles,

 4   Your Honor.

 5              MR. PERKINS:  Bryan Perkins on behalf of Gino

 6   Freeman.

 7              MR. WHALEN:  William Whalen on behalf of Randy

 8   Martin.

 9              MR. KATZ:  Raymond Katz on behalf of Derrick Knox,

10   Your Honor.

11              THE COURT:  Thank you.

12              MR. ISALY:  Charles Isaly on behalf of Bethany

13   Notestine.

14              MS. JONES:  Christine Jones on behalf of Reno

15   Lattimore, Your Honor.

16              THE COURT:  Okay.  And this is the issue that we've

17   had a couple, at least, informal conferences on, correct?

18              MR. LAUFMAN:  Yes, Judge.

19              THE COURT:  Okay.  Mr. Oakley, if you just want to --

20   or Mr. Parker, whichever person is going to be responding,

21   just come up to the podium.

22              MR. PARKER:  We'll be responding to separate motion

23   issues, Your Honor.  Which one does he plan on taking first?

24              MR. LAUFMAN:  I would be speaking, I would assume, on

25   the joint motion for an order to cause the government to
```

1    create or issue an index of the taped statements alleged to be

2    used against the defendants.

3          THE COURT:  That's the motion I thought we were going

4    to discuss primarily this morning.  Is there something else

5    pending?

6          MR. PARKER:  Motion for discovery, Your Honor, which

7    we believe that they are moot.

8          THE COURT:  But that's kind of a general --

9          MR. PARKER:  Right.

10         THE COURT:  Okay.  This is the issue, and correct me

11    if I'm wrong, but somebody, I think, in an informal conference

12    had indicated there were literally hundreds, if not more,

13    hours of taped conversations; is that correct?

14         MR. LAUFMAN:  That is our understanding, Judge.  I

15    think we were told 80,000 minutes.

16         THE COURT:  Yeah.  And then I guess the issue was,

17    was there a way that you could receive the information in a

18    more manageable fashion, correct?

19         MR. LAUFMAN:  Correct, Judge.

20         THE COURT:  I mean, I understand what you're asking

21    for.  Mr. Parker, what's the government's position?  We

22    informally discussed this at least once, maybe twice.

23         MR. PARKER:  Right.

24         THE COURT:  We were going to try to see if there was

25    a manageable format or delivery system so that the defendants

1    could understand the material that the government has.

2             MR. PARKER:  Well, Your Honor, the material should be

3    taken as a whole.  Rule 16 of the Federal Rules requires and

4    limits the government only to allow an inspection for copying

5    of the materials, not a cataloging.  That's what the defense

6    would like in this case.  It is not our job to do their work.

7        They indicate in their motion that an index may exist.

8    Your Honor, that's work product, and it's not our job to turn

9    over our work product.

10       It is analogous to a complex drug case where we may do a

11   search warrant and recover voluminous documents.  We would

12   not catalog those for each particular defendant, and that has

13   been an issue in other courts, such as Judge Beckwith, and

14   those motions were denied.

15            THE COURT:  Let me ask you a question.  I'm guessing

16   it's something we can discuss in open court.  If it's not, you

17   can approach the bench.  Generally, what is the nature and

18   content of the recordings?  Does it contain this crew

19   themselves talking to people, or what is it?

20            MR. PARKER:  Yes, Your Honor, and others who are

21   potentially unindicted co-conspirators.

22            THE COURT:  Okay.  Just speaking out loud, I see a

23   difference between perhaps the other material and the ones

24   involving the defendants, because I think that phone

25   recordings involving this group of people would be

1   discoverable under, what is it, 16(a)(1) or (b)(1?).

2         MR. PARKER:  (a)(1)(B), Your Honor.  You are correct.

3   Discoverable.  We make them available for inspection.  It's

4   even indicated in the congressional reports that we are

5   limited to making them available for an inspection, not to

6   catalog those.

7         THE COURT:  But how do you make them available for

8   inspection for an individual defendant unless there is a way

9   for them -- I mean, are you giving them -- for example,

10   Mr. Laufman's client is Jeffrey Pitts.  Is Mr. Laufman getting

11   each statement that's attributed to Jeffrey Pitts?  Is that

12   what's going on, or what are we doing?

13     Tim, you can just stand there, if you want, because if

14   Mr. Laufman wants to be joined by other counsel, I'll permit

15   that.

16     What I'm trying to understand, Mr. Parker and Mr. Oakley,

17   is, what is the material?  I mean, if, for example, Mr. Pitts

18   is on 50 phone calls, let's say, for example, or interviews,

19   shouldn't Mr. Laufman get those 50 calls or be permitted to --

20         MR. PARKER:  Actually, Your Honor, he should get all

21   of them, and it's his job to go through those calls.  Now, if

22   we say --

23         THE COURT:  Wait a minute.  Hang on a second, Ken.

24   When you say "all of them," you mean all of Mr. Pitts' calls

25   or all of the calls?

1           MR. PARKER:  All of the calls, Your Honor, because --

2    and let me state it in this fashion.  If, let's say, for

3    instance, another co-conspirator is on the phone with someone

4    else and they talk about Mr. Pitts, and the government says,

5    "Well, we don't believe that's part of Mr. Pitts' statement,

6    what they're talking about," and we don't index that call or

7    hand it over?  That comes up at trial, and it's a

8    co-conspirator statement, not hearsay, I'm sure we'd probably

9    still get an objection from defense and they say, "We hadn't

10   heard this call.  We were unaware of it."  And if the defense

11   didn't do that, I'm sure we would get a motion on appeal --

12   or, I'm sorry, an appellate argument of ineffective assistance

13   of counsel having not listened to all the calls.

14       See, that's asking the government to sort of --

15           THE COURT:  You know, I don't mind you asking them to

16   look for a needle in a haystack, but not in a stack of other

17   needles.  I mean, I think we ought to -- he ought at least to

18   be able to get his own defendant's material readily

19   produceable, I would think, and that should apply to each of

20   the crew.  Then, you know, if there is cross-calls or

21   something, then, you know --

22           MR.  PARKER:  But the problem still, Your Honor --

23   and I agree that we should, in due diligence, do that.  But in

24   an ongoing drug investigation involving multiple defendants,

25   one, you are asking us during this ongoing investigation to

1  know at that time of turning over the calls that that is

2  actually Mr. Pitts' voice, that that is actually his voice on

3  that phone.  Because it could -- we could later on say, "You

4  know what?  That's not Mr. Pitts' voice."  Or we could listen

5  to other calls and during a three-way or whatever type of

6  call, we say, "Hey, now we believe this is Mr. Pitts' voice on

7  this call."

8          THE COURT:  But you guys -- I mean, you guys, at the

9  very least, I'm assuming have gone through and figured out

10  what you're going to use, right?

11          MR. PARKER:  Well, Your Honor, not -- in an ongoing

12  case in which individuals are involved in plea negotiations,

13  and we are moving forward to trial, and we sit down with even

14  other defendants, co-defendants, and go over calls with them,

15  they may bring new information to us.  "Well, that little

16  snippet of time in which a person got on the phone and spoke

17  about something, that was Mr. Freeman.  Or that was this

18  person."  Are we now obligated -- in the interest of safety of

19  witnesses, are we now obligated to say, "Hey, we have to now

20  turn over that call in a piecemeal fashion"?  Which could

21  alert an individual saying, "Well, that must be a witness

22  there.  Or someone must be talking in regards to that call."

23      The defense counsel are very savvy, Your Honor, and we put

24  nothing past them, but --

25          THE COURT:  Are you sure about that?

1          MR. LAUFMAN:  Let the record reflect we are savvy.

2    Judge.

3          MR. PARKER:  We believe so, Your Honor.

4          THE COURT:  Okay.

5          MR. PARKER:  They know that we -- up to the point of

6    trial, that we are going to -- our due diligence is to

7    prosecute this case and to continue to investigate and to

8    continue to listen to the calls.

9          THE COURT:  And I get that, and that's the reason we

10   talked about a trial date and why all the defense counsel say

11   we needed until probably May to get this thing organized so

12   they have time to listen to some discovery.

13       I was looking at a -- there was a case -- we didn't find

14   much in the Sixth Circuit to help us, but there was a case in

15   the Second Circuit where they talked about the application of

16   Rule 16.  I'll give you this later, Ken.  You can look at it,

17   because I might not decide to actually -- it's *U.S. versus*

18   *Thomas*.  In that case, they cited a case called *Matthews* where

19   somebody, I guess, sent a love letter or something from the

20   jail out, and they said all that stuff is produceable ahead of

21   time.

22       So, I mean, I'm thinking -- I mean, obviously, if you guys

23   have not identified a particular voice on a tape and you're

24   not sure what it is, then I guess under some theory of there

25   may be favorable evidence, then maybe the defense counsel has

1   to figure out a way to work through that themselves.  I think

2   we have talked a little bit about investigators or whatever

3   getting help in that regard.  But if you guys have -- if you

4   have statements of, you know, say, Mr. Pitts talking to

5   somebody on the outside that you think is incriminating or you

6   intend to use, I think you have to give those to Mr. Laufman.

7   Or if you've got Randy Martin talking to Jeffrey Pitts, you

8   probably have to give that to Laufman and Whalen, I would

9   think.

10      I mean, it's stuff you plan on using at trial, right?

11          MR. PARKER:  But it's the index, Your Honor.  The

12  call --

13          THE COURT:  But, I mean, how -- I mean, I used to

14  practice corporate law for big -- it's like one of these guys

15  -- I've been there before -- "Hey, there's a room of

16  documents.  Go find it."

17          MR. LAUFMAN:  I don't think we can do it quite like

18  that.

19          MR. OAKLEY:  We can provide --  I mean, there is --

20  the officers have listened to an index of -- or listened to

21  the calls and come up with what they think is relevant.  The

22  problem is -- but we can provide that.  The problem is it

23  cannot be considered complete or thorough because there may be

24  something on there that's relevant to us that may not be

25  relevant to them.  There may be something on there that's

1    relevant to one of the defendants but not to us at the time.

2        They still need -- you know, the index cannot relieve them

3    of their obligation to go through those tapes.  That's our

4    concern with the index, is that it cannot be considered to be

5    a complete and thorough digest of all the relevant calls.  And

6    somebody's name may come up, or we may learn someone later on

7    that we use.  That's the concern.  We can point to some of the

8    relevant calls or the calls that we think are relevant.  Our

9    concern is that that cannot be considered to be the end-all of

10   listening to these tapes.

11       We will be glad to give them copies or have them -- they

12   can come down and copy whatever they want.  It's the index

13   that we're concerned about being considered some type of

14   complete report --

15           THE COURT:  I got that from your earlier comments,

16   Tim, that you don't want to -- you're not saying that this

17   index is all we have and that's relieving these guys of their

18   obligation to maybe plow through other stuff.  I mean, tell me

19   a little bit -- describe what would be on this index.  I mean,

20   what are they getting?

21           MR. OAKLEY:  They are a series of jail calls, prison

22   calls cataloged by name of who we think are the main players.

23   Some are from Mr. Pitts, some are from Mr. Freeman, and some

24   are from other people.

25           THE COURT:  Sure.

1      MR. OAKLEY:  And the calls will be from Mr. Freeman

2  to a co-defendant or to another person and then three-ways to

3  ultimately either a target or a co-defendant, and there is

4  talk on there about drug trade.

5      THE COURT:  Okay.

6      MR. OAKLEY:  We have no problem with that.  It's just

7  simply that of the 30 pages we have cataloged with

8  Mr. Freeman, the box is, I'm going to guess, roughly 40 to 50

9  disks regarding Mr. Freeman.  Each one may have 40 calls, and

10 each of the calls is 20 minutes.  You know, there may be

11 something in those 80,000 minutes that we didn't pick up or is

12 not relevant or we don't know it to be relevant.

13     THE COURT:  But, at the very least, Perkins can look

14 at your index and find and listen to the ones you are saying

15 are possibly his client and plan on using?

16     MR. OAKLEY:  Yes.  That was done for us as part of a

17 work product, which is, I guess, another concern.  Mr. Pitts,

18 I think, has two CDs now completed.  There is a third that we

19 are to receive from Chillicothe we have not indexed.  We would

20 be glad to provide copies of those to Mr. Laufman or whoever

21 else wants a copy of it.  They are welcome to come down and

22 bring their CDs, and we'll give them a copy.

23     THE COURT:  Okay.  But, for example, would that all

24 just be his client as far as you know?

25     MR. OAKLEY:  Mr. Pitts is calling other people, other

1    people involved in the conspiracy here.

2              THE COURT:  Right.  But at least he is identifiable?

3              MR. OAKLEY:  Yes.

4              THE COURT:  Okay.  Well, anyway, we're trying to work

5    through this thing, so why don't you guys tell me your

6    thoughts so far?

7              MR. LAUFMAN:  Well, Judge -- and we appreciate some

8    of your comments.  Many of the things that you stated ring

9    exactly where we feel these issues should be looked at.  This

10   case, we believe, is very analogous to a large white-collar

11   case.  We have been given, you know, 80,000 documents and

12   said, "Go find it."  At some point, we have to look at a

13   couple of different issues.

14        First of all, the government is responsible to turn this

15   over in a manageable fashion.  They can't just say, "Here is

16   your haystack.  Jump in."  So the question that you asked -- I

17   don't know if we crossed that bridge yet -- is:  What exactly

18   index does exist?

19        It sounds like the government has created something to the

20   ability to say, "Well, here are calls that just have this

21   person.  Here are calls that just have this person."  Just

22   because they created it, just because their agents did it does

23   not make it work product.  As the Court well knows, work

24   product has to contain the attorney's thoughts, the

25   impressions, some type of case strategy.  I don't think we

1  have heard anything.

2     At some point, it may be worthwhile for the Court to

3  review the index in question and see what you feel.  We are

4  happy to have that occur *in camera*.  If your finding is at

5  that time that this is simply a usable index which would

6  assist the defendants, then it should be produced to us.

7  Perhaps work product material, if there is a notes field on

8  each call where the officer says, "This is a good one.  We've

9  got them here," something that really might be work product,

10  that could perhaps be easily redacted?

11     But it sounds like the government has done the work

12  necessary to provide the information to the defendants in a

13  usable fashion sufficient to at least guaranty due process and

14  their rights to a fair trial.

15          THE COURT:  Actually, I'm not quite sure what

16  Mr. Parker and Mr. Oakley are willing -- I mean, Mr. Oakley

17  described some kind of index.  What are you willing to

18  disclose to the defendants at this time, anything or --

19          MR. OAKLEY:  Your Honor, just for the record, I spoke

20  to Mr. Isaly earlier this week.  I provided him a copy of the

21  tapes that I thought were -- or the index that was relevant, I

22  thought, to his client involving Mr. Pitts.  I have no problem

23  giving that up.  My concern is -- and I don't want to -- Ken

24  is correct with his own issues here.  My concern is that it's,

25  you know, the five or six pages that may involve Mr. Pitts'

1    phone calls, one, are absent the calls from Chillicothe that

2    need to be added later.  It's just simply that we don't want

3    to be in a position to have someone claim "Well, we used this

4    index in good faith, and it wasn't inclusive.  You should have

5    told us about this, this, or this."

6            THE COURT:  We can talk about that in a minute.  But

7    I mean, am I sensing that you guys are prepared to at least

8    give an index or a partial index?

9            MR. PARKER:  Your Honor, we've got to be sure not to

10   set a dangerous precedent here in the sense of turning over

11   our work product.  I mean, we created an index for our

12   understanding of what we believed at the time we have and to

13   increase that index.  In doing Title III cases and other wire

14   intercepts, are we going to set a precedent here where in the

15   future we get 70,000 minutes in which we have to listen to

16   over and over again, that if we begin to do notes on those

17   minutes we have to turn over who we believe is talking on the

18   phone to defense counsel?  This case involves, what, eight

19   individuals?  Normally -- I just did a case this summer that

20   had 20.  It had just as many minutes in that case, but we were

21   not required to turn over an index of who we believed were on

22   the phone.

23           THE COURT:  Yeah.  I mean, you know, here's -- I know

24   the practical considerations.  I know the disclosure issues.

25   I know all the concerns the government has.  I believe many of

1   those concerns in certain situations can be valid.  I don't

2   want to cross any lines in terms of confidentiality, things

3   like that.  But what I can do in this case, I think, is order

4   you to give each individual defendant the statements that you

5   attribute to them, which means you guys are going to have to

6   go through somehow and pull those out, let them know exactly

7   what they've got.  I'm assuming that they are going to

8   probably talk with each other about the information as they

9   work through a joint defense if one is out there.

10          I'm just trying to figure out -- I was hoping from the

11  informal conferences that you guys could figure out a way to

12  skin that cat that would handle your confidentiality concerns,

13  your precedential concerns and things likes that.  But if I

14  say, "All right, give Isaly all of Notestine's statements" and

15  you say "Well, we did.  They are in a box of 80,000 against

16  the wall, and he's got to go find them," that's not going to

17  cut it.

18          MR. PARKER:  We wouldn't do that, Your Honor, and we

19  didn't do that last summer.

20          THE COURT:  Okay.

21          MR. PARKER:  What we did, we gave them the pertinent

22  calls.  We said, "This is all of Miss Notestine's statements

23  that we feel are pertinent at this time that we will use.

24  Listen to those calls."  It may be 20.  It may be 40.  But we

25  didn't say, "Now let us do an index where we say, "Hey,

1   Notestine and this person on this date."  All we said was,

2   "This is Bethany's calls."  We didn't say, "Here is a whole

3   box."

4           THE COURT:  So how did you serve them up, like on a

5   CD or what?

6           MR. PARKER:  With retained counsel, they were

7   required to provide us with CDs.  With appointed counsel, we

8   came up with the CDs and so forth, or the Court chose to, for

9   some, put it in the court costs.

10     Your Honor, we have no problem also letting the CDs go out

11   to the attorneys so that they, over the weekends, could burn a

12   copy of the CDs.  We can take them down to Provident Camera

13   Shop and have the CDs burned and then billed back to us.  But

14   we didn't just give an entire box and say, "Hey, these are all

15   the calls.  These are the 850 calls, and here you go.  Go

16   search for the needle in the haystack."  No.  We pulled it

17   out, we said, "Hey, these are 50 pertinent calls particular to

18   your client."  That's all we had to say.  "This is for your

19   client."

20     Now, if we get any more, if we plan on using those in

21   court pursuant to Rule 16, we're going to also let you know we

22   have more.  But we, in no way, have to say, "Hey, let us

23   create this index and tell you our work product and what we're

24   thinking," because that's kind of -- that's going to create

25   kind of a chilling effect with our office in the sense of what

1   our work product is going to be down the road.  If we never

2   created an index, we wouldn't be here.  They couldn't request

3   what we don't have.

4          THE COURT:  I mean, I was under the impression that

5   you guys had not gotten your individual defendant's recorded

6   information at this time.  Is that right?

7          MR. LAUFMAN:  Judge, at this time -- and I can't

8   speak for anyone else -- I have not received anything.  When

9   we last left the informal conversation, anything in terms of

10  actual recorded materials, my understanding was that the

11  government had taken on the task for at least CJA counsel to

12  copy all 80,000 minutes and say "Here," which I think is

13  appropriate.  They should give us access to the room of

14  documents just in case we do want to go through --

15         THE COURT:  I mean, you know, your request cuts both

16  ways.  Most times, defense attorneys want to see everything,

17  and the government says -- I don't want the government

18  selecting what they think may be favorable evidence to a

19  particular defendant.  I think that's your guys' obligation.

20  You guys have to figure out a way to deal with maybe the mass

21  of materials, but I do think each individual lawyer is

22  entitled to a copy of his individual defendant's materials.

23         MR. PARKER:  Your Honor, you are correct, and let me

24  clarify the statement he made.  We have talked to Mr. Perkins,

25  he has come to our office, and he has received some materials

1  in discovery.  Now, had he come to our office and said, "Hey,

2  I only want my calls or my statements," pursuant to Rule 16 we

3  would have addressed strictly those calls and those

4  statements.  So discovery is ongoing with everyone.  Let's

5  make the record plain that discovery is available, that in no

6  way has discovery in any way been precluded from any of the

7  defense counsel.  We are in discovery with everyone.  If the

8  Court sends us with marching orders that we are to make those

9  calls available that we deem pertinent, we will do that.

10         THE COURT:  Okay.  But they are being made available,

11  Ken, in identified fashion like, you know, "Here's Laufman's

12  client's calls" --

13         MR. PARKER:  We can do that, Your Honor.  Oh, yeah.

14         THE COURT:  Okay.

15         MR. PARKER:  That's the spirit of the rule.  We

16  agree.

17         THE COURT:  Well, that's the first bridge we have to

18  cross.  Would it be helpful for each counsel to state where

19  they think they are in terms of that process?  I'm not going

20  to make a formal ruling today, just so you guys know.  I'm

21  going to bring you all back as we work through this.  I don't

22  know if we actually think we need to have everybody say where

23  they think they are.  If the government is willing -- if the

24  government is doing that, that should cover at least the

25  minimum of what I think they should get, which would be the

1   calls attributed to their client that you've identified.

2          MR. PARKER:  You're correct, Your Honor.  That

3   satisfies 16(a)(1)B.

4          THE COURT:  Okay.

5      In terms of your guys' search for favorable evidence, I

6   don't have a clue as to how you're going to manage the mass of

7   things.  I'm not sure these guys actually have an index --

8   give me your thoughts.

9          MR. LAUFMAN:  Well, Judge, and I do want to clarify,

10  and I did on the record before, Mr. Parker and I have engaged

11  in some discovery.  I didn't want to say nothing had occurred.

12  Clarify it to say simply that I don't have any audio

13  recordings yet, but we do understand that discovery is

14  ongoing.  Certainly, I think that answers part of their

15  concerns as well, that if later information becomes known,

16  that they have to do that.

17     I think the Court is really in agreement with what we're

18  asking for.  They should give us some type of -- number one, I

19  should get everything attributable to Mr. Pitts.  Here are the

20  calls that we know were made by, sent to Mr. Pitts in a

21  discoverable fashion, and you can tell me which disk, which

22  track.  I can go and find it.  I can figure that out.  I know

23  what day it happened.  I know what time it happened.

24     We are looking what was provided to Mr. Isaly, apparently.

25  This seems more than sufficient.  The dates, the individuals

1   involved, apparently dates and the times that were made.

2   There is some references to some phone numbers that were

3   called.  So, I mean, that would let us know.  Because

4   Mr. Pitts has been locked up.  I mean, they have got his calls

5   from jail, apparently.

6          THE COURT:  Ken, now that I think -- was the document

7   that Tim produced, have you looked at that?  Are you

8   comfortable with that type of --

9          MR. PARKER:  Your Honor, that was produced at a time

10  in which workloads were different and so forth.  I don't

11  believe that the production to one counsel sets the mandate

12  for the case, Your Honor.  I understand --

13         THE COURT:  I'm just asking you if --

14         MR. PARKER:  Right.  I understand what was produced

15  and so forth.  As indicated, this is ongoing, Your Honor, and

16  we do not want to create or relieve defense counsel of

17  their --

18         THE COURT:  Oh, I get that.  My question is, it seems

19  to me that -- and maybe I'm just being really dense here, but

20  it seems to me there are two ways for the government to handle

21  this.  Either they have to -- you guys have to pull off the

22  individual statements from the array of disks and compile

23  separate disks for each defendant with what you think the

24  material attributable to them, or you have to create some kind

25  of an index where these guys can go in and find their

1  statements.  I don't know what's easier for you or for a --

2        MR. PARKER:  For that particular disk, we will, Your

3  Honor.  If it's a disk in which all the calls on that disk

4  relate to the same -- are the statements of that defendant, I

5  believe we should just simply say, "This entire disk, all 40

6  calls, has your defendant."

7        THE COURT:  Right.

8        MR. PARKER:  If it was a disk where call 16 is the

9  call which relates to the statement, then I believe, in the

10 spirit of the rule, we should say simply, "Call 16 is the call

11 you should focus on."

12       THE COURT:  Okay.

13       MR. PARKER:  But beyond that, Your Honor, I don't

14 think that we should necessarily go through and say "Hey,

15 these are the individual calls all over the place" if an

16 entire disk can be turned over.

17       THE COURT:  Well, I was with you for two-thirds of

18 that discussion.  I guess I'm assuming you know what you're

19 going to use, and I guess maybe that's an incorrect

20 assumption.

21       MR. PARKER:  It changes, Your Honor, because, as

22 intimated, we're in plea negotiations.  As plea negotiations

23 go forward, a person may say, "Well, we talked about this one

24 day."

25       THE COURT:  I'm not worried about what happens as we

1  go forward because there is an ongoing duty to supplement.  If

2  you've got a disk that's got, you know, all Martin calls,

3  well, that's easy.  But what do you do where you've got a

4  situation where you've got -- and I don't know how these

5  things were set up.  Maybe you've got ten people's phone calls

6  on a disk that contains 800 phone calls and things like that.

7  I mean, how do these guys -- either you guys have to pull out

8  what's attributable to their client and give it to them on a

9  separate disk or you've got to tell them how to find the

10  material, I think.

11          MR. PARKER:  We'll do that, Your Honor.

12          THE COURT:  Okay.

13          MR. LAUFMAN:  Judge, only two other thoughts, I

14  guess, I would offer on that.  Certainly, if there are, you

15  know -- I don't want to end up with instead of 80,000 minutes

16  of total phone calls, 20,000 minutes of "Here's all the phone

17  calls you made," when the government knows darn well that only

18  some of them are relevant to this case, attributable.  It sort

19  of takes us then to the issue of at some point the government

20  has to provide us with notice of its intention to use

21  evidence.

22          THE COURT:  We're not there yet.

23          MR. LAUFMAN:  We're not there yet, and I agree.  At

24  some point, maybe that makes sense because that's where we're

25  headed.  Judge Beckwith and I are working this through in a

1  case called *United States versus Graham*, which is a tax case

2  involving 1.3 million documents.  The government in that case

3  has been extremely hesitant to provide indices for various

4  reasons.  They actually ended up spending about 50-plus

5  thousand dollars setting up a searchable database.

6      At the end of the day, Judge Beckwith acknowledged in her

7  final -- her current pretrial order is on file.  She said,

8  "Government, at some point you have to tell these guys what

9  you're going to use a trial."  Because I understand that there

10  may be a call that is extremely damaging to Mr. Pitts, but it

11  does not involve Mr. Pitts.  It's a co-conspirator or an

12  unindicted -- you know, somebody saying this about Mr. Pitts.

13  They are going to have to at some point point those out.  I

14  think they have already indicated they know what's relevant.

15  At some point, we're going to have to get an idea of what's

16  going to be used at trial.

17          THE COURT:  But I want to go back, Paul, with

18  something you said earlier.  I think it was what Mr. Oakley

19  was focused on, and Mr. Parker to some extent.  I mean, you've

20  got an obligation to review the materials.  Even though they

21  may intend to use something, it's not their obligation to tell

22  you there is nothing relevant on the other stuff because they

23  don't know what's relevant.

24          MR. LAUFMAN:  Right.  And we're not trying to hold

25  them to that burden, Judge.  That's the part I agree with.

1    Certainly, if their opinions change, if new information

2    becomes available, there is a new disk on the way, I have no

3    problem with either of these counsel -- you know, I know that

4    they will continue to comply with their obligation to

5    supplement.

6        I can't speak for everyone else, and I think we probably

7    should give everyone a chance to speak one at a time just so

8    I'm not speaking for the whole -- I sort of got shoved out in

9    the front of this.

10            THE COURT:  That's all right.

11            MR. LAUFMAN:  At some point, if new information comes

12   in and we get it, we get it.  That's fine.  But it sounds like

13   they've got the indices we need.  We just need a way to get to

14   the heart of this.

15            THE COURT:  Well, I think I already said I'm not

16   going to make a formal ruling today.  What I'm going to

17   suggest is that you guys go back and do your meetings.

18       Yeah, go ahead, Ken.

19            MR. PARKER:  Your Honor, I guess -- I don't know if

20   the Court has seen the information that was provided to Isaly.

21            THE COURT:  I have not.

22            MR. PARKER:  But that indicated the track number, the

23   segment, and the part of the track in which was listened to as

24   well as a transcription of the material in that track.  We

25   believe we should turn over, and the Court has just spoke to

1  it, the disk number and the track number, but we don't -- we

2  should not have to -- and counsel is indicating to the Court

3  that we should do what was provided to Mr. Isaly, and that is

4  to say, the segment number and then to transcribe that part of

5  the portion of the segment.

6      That's not what we should do, Your Honor.  We should have

7  to -- and what Mr. Laufman is speaking to, the track number

8  and the disk number, that's just like turning over a document

9  in this tax case.  The United States should not have to in

10  that tax case then highlight the portion of the document -- -

11          THE COURT:  I'm riding with you on that, and I don't

12  think they have to do a transcript.  I guess my question,

13  though, is -- because I don't do much on computers.  I mean,

14  when you give the disk number and a track, is a track a huge

15  body of material?

16          MR. OAKLEY:  Each track may be 20 minutes.

17          THE COURT:  Oh, okay.  All right.

18          MR. LAUFMAN:  And, Judge, I actually agree with

19  Mr. Parker.  I did not indicate that I thought that that's

20  what the government was required to do.

21          THE COURT:  You just said it was a great idea.

22          MR. LAUFMAN:  I thought it would be a great idea, and

23  I would be more than satisfied with it.  Having reviewed that

24  document, I would have a hard time arguing that I have to get

25  that.  But that information as it appears in front of

1   Mr. Parker, I assume, is a typed document?

2       If they want to go through and even remove -- you know,

3   "Here's our transcription.  We're not going to make this easy

4   for you, but here is a list that starts with Pitts.  It has a

5   day, a time, a track number, number called."  And if they want

6   to go through it, I mean, cut, paste, delete, cut, paste,

7   delete, and take out the stuff that they don't want me to see,

8   honestly, Judge, I don't know that I would object to that.  I

9   will listen.  I'll create my own transcripts.  I'll do our due

10  diligence.  It sounds like they have already got a great

11  blueprint for what we're asking for.

12          THE COURT:  Okay.  Well, I'm going to let you guys

13  try to resolve this in private, if you can.  Then we'll come

14  back in a couple of weeks, and you can tell me if it's working

15  or not.  I think the government sort of understands where I'm

16  coming from.  I think defense counsel does.  You can deal with

17  issues as they come up.

18      We previously had picked a trial date of what?

19          COURTROOM DEPUTY:  May 21st.

20          THE COURT:  Well, I've got a feeling it's going to

21  take a long time for the lawyers to review this.  What I'd

22  like to do is perhaps have each counsel come up and just tell

23  me where they think they are relative to the discovery issues,

24  and then maybe with their clients we can discuss the timing of

25  the trial issues.

1    I don't know if the marshals --

2    Are these guys permitted to come up to the podium with

3  their lawyers, just do it one at a time?

4         A U.S. DEPUTY MARSHAL:  Yes, sir.

5         THE COURT:  All right.

6         MR. LAUFMAN:  Judge, I'm satisfied I have spoken on

7  behalf of Mr. Pitts.  With your permission, I'll have a seat

8  and let each defense counsel approach.

9         THE COURT:  Does Mr. Pitts -- have you talked to him

10  about the timing of the trial date?

11         MR. LAUFMAN:  We did, Judge.  We signed a waiver.  It

12  was actually signed a few days or weeks ago.  I provided it to

13  your staff today.

14         THE COURT:  Can you just show that to Mr. Pitts at

15  this point in time?

16         MR. LAUFMAN:  Judge, can I approach the defendant?

17         THE COURT:  Oh, absolutely, as long as the marshals

18  are okay with it.

19         A U.S. DEPUTY MARSHAL:  Yes, sir.

20         MR. LAUFMAN:  And for the record, Judge, I'm showing

21  to Mr. Pitts the time waiver which he signed and executed in

22  my presence.

23    Is that the time waiver, Mr. Pitts?  Say it out loud.

24         DEFENDANT PITTS:  Yes, sir.

25         THE COURT:  Mr. Pitts, is that your signature on

```
 1    there?

 2           DEFENDANT PITTS:  Yes, sir.

 3           THE COURT:  All right.  Mr. Pitts, I think you

 4    understand from the discussion we're having today that it's

 5    going to take a little bit of time for your lawyers to figure

 6    out exactly what's stacked up against you.  Okay?  All right.

 7    The trial then is set for May 22nd, Mr. Pitts.  You'll be

 8    ready to go at that date, and I'd really like to hold that

 9    date and not push it out farther if we can.  All right?

10        Mr. Isaly, what's your -- how are you doing on discovery?

11           MR. ISALY:  Well, Your Honor, I'm getting there.  The

12    list that we have heard referred to I just got yesterday.  I

13    was able to meet and get an idea on some of the tapes.

14           THE COURT:  That beats this morning.

15           MR. ISALY:  Pardon me?

16           THE COURT:  I said that's better than this morning.

17           MR. ISALY:  That's what helps with these settings, I

18    think, Judge.

19           THE COURT:  I was thinking about that Consent to

20    Search.

21           MR. ISALY:  That's true.  I guess one of the points

22    here that I would suggest is that the government has to listen

23    to these tapes.  I mean, they are obviously listening to them

24    when they are recorded, and somebody is making notes as to who

25    is on what tape.  Maybe for in future cases like this, they
```

1    are going to have to have, you know, a second pad that says

2    what their work product is in relation to that conversation.

3    But the first segment of who is on what tape on what date and

4    some brief summary of what subject matter is being talked

5    about is something that somebody has already gone through, and

6    that's what I have received.

7        It seems to me in the sense of judicial economy here -- a

8    government employee at government expense has already gone

9    through that exercise.  Now, if they are going to hand over

10   all these tapes to us, then we're going to have to hire

11   somebody to sit and listen and go through and pick out as to

12   Notestine, Pitts and so on and so forth.  So the government

13   ends up paying twice for this first segment, which I think

14   we're over now and we're going to get as relates to each

15   specific defendant, which I think makes economic sense for the

16   government in terms of producing that.

17       I guess the other point that we haven't really gotten to

18   yet for all of us, as I understand it, these CDs are only -- I

19   can only listen to these with my client with a computer.  It's

20   not like I can take in some kind of a -- like we used to with

21   a cassette tape recorder and sit there and punch a button and

22   play it right for them while we're sitting in the little booth

23   at the Justice Center.  Now I have to go in with a laptop,

24   find a place where we can plug in where it's somewhat quiet,

25   then I can open the laptop and they can listen, listen to

1    these three conversations because this is pretty critical.

2        So there is going to be a practical problem even after we

3    get down to the ten conversations that we want our clients to

4    hear of getting this into the Justice Center with a computer

5    or access for them.

6            THE COURT:  On that one, though, Chuck, I would think

7    that if you're going to go sit with Miss Notestine and go over

8    this stuff, you would know -- like, just say, "Hey, you've got

9    to hear these five tapes, and I got to know" -- couldn't you

10   record it on a hand-held off of the computer and just take it

11   in?

12           MR. ISALY:  I think that's possible, but, again, I

13   guess I'm kind of backing up that line then.  In order for me

14   to really get that down to just a nut for her to listen to

15   just the few things that I want her to hear, I'm going to have

16   to have a pretty good idea starting out so that I can get that

17   down to just those few things that I think are really

18   pertinent to hear.  If we start out with just a whole box of

19   tapes, getting to that point is really going to be difficult.

20   I can see us hiring somebody to sit and listen to the tapes.

21           THE COURT:  And I don't know what the government has

22   done in terms of their internal work.  It may be like a drug

23   case where you've got 5,000 pounds, but once you hit a

24   thousand, you don't keep counting the rest of the stuff.  I

25   mean, the tapes --

1          MR. PARKER:  We've listened to all of them, Your

2     Honor.  That's why we do not believe it's such a burden on

3     defense counsel.  It's nice, as Mr. Isaly has indicated --  I

4     guess we're doing the work of two people.  Somebody else has

5     to be hired.  I guess it's great to know we are being

6     underpaid.

7          Your Honor, let's say, for instance, the Assistant U.S.

8     Attorney listened to a call through a code, and this happened

9     before, felt that someone was talking about a murder and said

10    -- and they wrote in their notes on that first memo pad, you

11    know, "This is the call which they are talking about the

12    murder and da, da, da."  That's not going to relieve defense

13    counsel of their burden of having to go to the Justice Center

14    with a computer, so I don't see how that's relevant.  You

15    still would have to go to the Justice Center and play that

16    call.

17         But going back to a mistake that would be made by the

18    Assistant U.S. Attorney, now they are held to what they

19    believe to be some code talking about something and we wind up

20    here again where defense counsel is saying that the Assistant

21    U.S. Attorney misled them and did not go back and give them

22    their third memo pad saying where they found the mistake there

23    saying, "Oh, that's not what was said in that call, that this

24    is what was said."

25         The defense counsel are in the best position to talk to

1    their clients and figure out what is being said on those

2    calls.  It's left to the government to surmise what we believe

3    is being said, and then, if we talk to witnesses, to sit down

4    to go over the call again and again to figure out what's being

5    said.

6        In drug cases, people do not talk on the phone and say,

7    "Hey, bring the money, bring the cocaine, bring the heroin

8    over here."  They talk on the phone and they say, "How many

9    puppies you got?  How many puppies are you going to send us?"

10        So the first time we hear that, we're thinking, "At the

11    search warrant, there were nine pit bulls.  They may be

12    talking about puppies."  So we write down "Call Not Pertinent"

13    and we tell them that it's not pertinent.

14            THE COURT:  Well, I don't think it's your guys' job

15    to analyze the material from any individual defendant, but I

16    think it's your job to give them the material that relates to

17    their defendant.

18            MR. PARKER:  Absolutely, but he is saying that we

19    should have two memo pads and the first --

20            MR. ISALY:  Just a practical suggestion in terms of

21    not giving up your work product, because somebody, as I say,

22    has already listened to these tapes, to pull out who is on

23    what tape just so you can isolate it for purposes of trial

24            THE COURT:  But you guys know where I'm coming from.

25    I think the first step is for each individual lawyer to get

1    the stuff that's attributable to her or his individual client.

2    That would be step one.

3         Charlie, did Miss Notestine sign a waiver?  Have you

4    talked to her about the trial date?

5              MR. ISALY:  Yes.  She signed one the day we were here

6    on that motion.

7              THE COURT:  Oh, that's right.

8              MR. ISALY:  Yes, she did.

9              THE COURT:  Okay.  John?

10             MR. KELLER:  Judge, on behalf of Kofi Cooper, we did

11   sign a time waiver.  I notice there was one previously

12   executed when Mr. Johnson was -- right.  And I simply had

13   another one signed, and so that issue has been resolved.  I

14   would assume that the first one was executed and acknowledged

15   in open court.

16             THE COURT:  And I think Miss Cooper's hearing when --

17   you guys have to go through -- we're not going to push it out

18   into the summer.  We're going to go in May, right?

19             DEFENDANT COOPER:  Yes, sir.

20             THE COURT:  Okay.  Thanks.

21             MR. KELLER:  Judge, the other point -- I think what

22   I'm gleaning from the conversation is that Mr. Parker is going

23   to indicate to me that I shouldn't expect to get what

24   Mr. Isaly got, but I'm going to get some hybrid, something

25   between the whole ball of wax and a portion; is that right?

1          MR. PARKER:  Yes.  We would be certain to satisfy

2     Rule 16.

3          MR. KELLER:  Okay.  And I think where maybe it's

4     premature because we're putting, in a sense, the cart before

5     the horse because ultimately they are going to have to

6     indicate what evidence they will be proceeding with.  So at

7     this point, on behalf of my client, we have no problems.  I

8     have had ongoing communication with both counsel, and we'll

9     just proceed accordingly.

10          THE COURT:  Yeah.  I'll speak to the whole group.

11     Should we pick a come-back date now or wait until somebody

12     needs to file a motion because they think they're not getting

13     what they need?  I'd just as soon have the status report --

14          MR. KELLER:  Judge, I think the issue is we have a

15     status report before Your Honor tomorrow at 3:30.

16          THE COURT:  Okay.

17          MR. KELLER:  I think what the concern is that perhaps

18     we can use this and not come back tomorrow for the Court's

19     time and our time.

20          THE COURT:  That's okay.  That's -- okay.  I'm just

21     -- do you want to go out a couple of weeks to discuss?  Is

22     everybody okay with that?  And everybody can come up and give

23     a quick summation of where they think they are, but it sounds

24     like we out ought to go out a couple, three weeks.  I don't

25     want to push it up too close to the trial date because you

1    guys need the info.  Should we come back, have a discovery

2    status in two on three weeks?

3              MR. KELLER:  Judge, on behalf of my client, that

4    seems prudent at this point.

5              THE COURT:  All right.  And I know with a group this

6    size that it's always hard to get everybody on the same dates.

7    Let's have a couple -- you don't all have to come at the same

8    time.  Obviously, the U.S. Attorneys will have to be there if

9    we have two settings.  If we can pick a setting that works for

10   everybody, great; if not, we can break it up.

11      Barb, you got any ideas?

12             COURTROOM DEPUTY:  Do we want to do two weeks?  We

13   can do it on the 14th.

14             THE COURT:  Better give them three, because each one

15   of these guys is going to try to contact Tim and Ken.  It's

16   going to take a while.

17             COURTROOM DEPUTY:  All right.  We can do it the 21st

18   of February, although we're in trial.  We could do it early in

19   the morning and late afternoon.

20             MS. JONES:  Your Honor, I'm out of town that entire

21   week on vacation, if that was the date.

22             THE COURT:  Okay.  How about a backup date?  Try the

23   backup date.  If everybody can do the backup date, we can bag

24   the first date.  Then if nobody can, we'll use two dates.

25             COURTROOM DEPUTY:  The backup date will have to go

1    into March.

2            THE COURT:  Okay.

3            COURTROOM DEPUTY:  March 14th.

4            MR. KELLER:  Judge, may I look at my calendar?

5            THE COURT:  Of course.

6            MR. LAUFMAN:  Judge, I think I speak for all the

7    attorneys I see in state court every morning, that afternoons

8    are probably always best for us.

9            THE COURT:  I was even thinking like 4:30, five

10   o'clock because then everybody should be free.  I don't think

11   we need you guys here for that to argue about what's coming.

12   We can do that just with the lawyers, I think.  We can

13   probably do it in my office unless there is going to be a

14   fight that we need to put on the record, or we can use the

15   jury room.

16      What was the second date?

17           COURTROOM DEPUTY:  The second date can either be

18   March 13th or 14th.

19           THE COURT:  Okay.  What was the first date you had,

20   Barb?

21           COURTROOM DEPUTY:  The 21st at 4:30.

22           MR. OAKLEY:  Your Honor, I'm in trial on the 21st

23   with Mr. Sutton.

24           COURTROOM DEPUTY:  Well, this would be at 4:30 after

25   we recessed.

```
 1          MR. KATZ:  I am in trial on March 14th.

 2          THE COURT:  We've got -- throw out two dates, Barb.

 3          COURTROOM DEPUTY:  February 21st at 4:30 and

 4   March 14th at 9:30, or we can do it in the afternoon.  We are

 5   free all day that day.

 6          THE COURT:  Between those two dates, can we cover

 7   everybody?

 8          MR. KELLER:  Judge, for me, the 21st of February is

 9   fine.

10          THE COURT:  Let's go around and say -- why don't the

11   lawyers state their name and state which day they can be here

12   so we can keep track of this?

13          MR. KELLER:  All right.  On behalf of Miss Cooper, we

14   would agree to the 21st of February at 4:30.

15          THE COURT:  Okay.  Chris?

16          MS. JONES:  I'm Reno Lattimore, Your Honor.  The 14th

17   would be fine for me any time that day.  Just for the record,

18   Mr. Lattimore has also signed a waiver.

19          THE COURT:  Why don't you come up and just tell me

20   where you are?

21          MS. JONES:  Mr. Lattimore has signed a waiver the

22   last time I saw him.  I have given it to the Court today.  I

23   believe he still is fine with that late date.

24          THE COURT:  Is that right, Mr. Lattimore?  You think

25   you would be ready by then?
```

1       DEFENDANT LATTIMORE:  Yes.

2           MS. JONES:   Your Honor, I've had no problem -- I

3   haven't received any formal discovery, but informal discovery

4   I was shown several documents that the U.S. Attorney intends

5   to use.  I was also given some informal discovery regarding

6   what statements or taped conversations that they would intend

7   to use at trial.  I have communicated those to my client.  I

8   haven't received anything formally, but I think that I -- that

9   would not be an issue, and I would look forward to any tapes

10  that they would have for my client.

11          MR. JACKSON:  Your Honor, Chris Jackson for Gary

12  Myles.  I share the same sentiments as everyone that's spoken

13  before me in that I have had discussions with counsel

14  regarding discovery, but I have not received any formal

15  discovery and look forward to receiving the tapes I guess as

16  soon as they are available within the next week or so.

17      And then that leads me to the next issue, which we have

18  not signed the waiver for speedy trial yet.  I believe that I

19  may be able to address that issue again once we have something

20  to look at.  At this point, that has not been signed.

21          THE COURT:  All right.  Maybe we should deal with

22  that after the -- which conference are you able to come to?

23          MR. JACKSON:  The 21st at 4:30 would be great for me,

24  Your Honor.

25          THE COURT:  All right.  Make sure we can deal with

 1  that the 21st.

 2      Who is Mr. Myles?  Okay.  You understand the job these

 3  guys have in trying to listen to all these tapes?  Okay.  So

 4  it's going to take a while to go through the paperwork and get

 5  the thing organized.  We're going to try to do the trial --

 6      Did counsel estimate how long the trial would take?

 7          MR. OAKLEY:  We were guessing between three and four

 8  weeks.

 9          THE COURT:  So we'll try to start that day in May and

10  get it completed at that time.

11      Mr. Myles, your lawyer will be back with you in terms of

12  where the discovery process is and what help he needs.  Is

13  that okay?  Can you answer out loud?

14          DEFENDANT MYLES:  Yes, sir.

15          THE COURT:  Okay.  Thank you.

16          MR. JACKSON:  Thank you, Your Honor.

17          THE COURT:  Thanks.

18          COURTROOM DEPUTY:  Mr. Perkins.

19          MR. PERKINS:  Good morning, Your Honor.  Bryan

20  Perkins for Gino Freeman.  As far as the status of discovery,

21  I have met with the U.S. Attorney.  They have gone over some

22  material with me, a few photographs and so forth.  The issue

23  is, there was -- the detective was there also, and he gave me

24  kind of a summary of what was on the tapes orally, but I have

25  not listened to the tapes yet.  It was left that he was going

1   to try to get some of those tapes together so that I could

2   listen to them and share them also with my client.

3       We would ask the Court if it would consider -- we would

4   also like an index, first, that could specify exactly what my

5   client -- the conversations that he was involved in.  It's

6   also going to be important that we have some sort of an index

7   as it relates to other calls as -- certainly, it's going to be

8   relevant for my discussion with my client as to determining,

9   you know, any potential witnesses and so forth against him.

10      So I guess, ideally, if there was an index that indicated

11  Gino Freeman's telephone calls are on this track on this

12  certain disk, that would certainly be a very helpful starting

13  point.  But if it would also -- if there was some index

14  indicating that there is these other calls and who they are

15  between so that we can make reference to those calls, that

16  would be helpful.  I don't think we need anything as extensive

17  as "This is a call between so-and-so, and this is what was

18  talked about," but as long as there is some sort of index that

19  we can reference to who is making this -- who are making these

20  phone calls, that would be helpful.

21          THE COURT:  Okay.  We're working our way around that.

22  The first problem is the first problem, which is getting you

23  the stuff that they say your client -- the recordings he is

24  on.  So I'm sure you will be meeting with Mr. Parker and

25  Mr. Oakley in the next week or so to try to figure that out.

```
 1   Then as the case develops, there may be things that you guys

 2   are willing to come back, and we'll talk about that.

 3             MR. PERKINS:  Yes.

 4             THE COURT:  Okay.  All right.  Have you talked to

 5   your client about the trial date?

 6             MR. PERKINS:  Yes, Your Honor.  We have executed a

 7   waiver.

 8             THE COURT:  Does that give you enough time to be

 9   ready?  If the discovery process hopefully works the way we're

10   talking about, will you be ready this May?

11             MR. PERKINS:  Yes, Your Honor.

12             THE COURT:  Okay.  And who is Mr. Freeman?

13             DEFENDANT FREEMAN:  Right here, sir.

14             THE COURT:  You understand what's going on?

15             DEFENDANT FREEMAN:  Yes, sir.

16             THE COURT:  All right.  Thanks.

17             MR. PERKINS:  Thank you, Your Honor.

18             COURTROOM DEPUTY:  Mr. Perkins, what conference are

19   you available for?

20             MR. PERKINS:  Oh, I'm sorry.  The 21st.

21             COURTROOM DEPUTY:  Thank you.

22             MR. WHALEN:  William Whalen on behalf of Randy

23   Martin, Your Honor.  He has signed a waiver already.

24             THE COURT:  Okay.

25             MR. WHALEN:  And the 21st of February works best for
```

1  us at 4:30.  I have met with prosecutors, and it's ongoing,

2  but I have not received the tapes at this point.

3          THE COURT:  But you will hopefully be in contact and

4  we'll know by the 21st?

5          MR. WHALEN:  Yes.  And I adopt the arguments of other

6  counsel.

7          THE COURT:  Anything else, Bill?

8          MR. WHALEN:  No.

9          THE COURT:  Okay.

10         MR. KATZ:  Raymond Katz, Your Honor.  My client is

11  Derrick Knox, Number 6.  I would reiterate all the comments of

12  my colleague, Mr. Whalen.  We have submitted a trial waiver.

13  The 21st of February works best for us.  Again, we have been

14  given informal review of discovery.  I have not received

15  anything formally.

16         THE COURT:  Maybe I shouldn't be bringing it up now,

17  but what are we doing about Mr. Knox's special needs?  He was

18  going to get some care.

19         MR. KATZ:  Right.  We think that's ready to go.

20         THE COURT:  So we don't have to address that at this

21  point?

22         MR. KATZ:  We don't have to address that now.

23         THE COURT:  Okay.  I know getting around in a

24  wheelchair in the jail is pretty tough.

25         MR. KATZ:  We appreciate, again, the Court's

1  attention to that.

2          THE COURT:  Okay.

3          MR. KATZ:  Thank you.

4          THE COURT:  Chuck?

5          MR. ISALY:  Charles Isaly, Your Honor, for Bethany

6  Notestine.  February 21 at 4:30 would be best for us.  Thank

7  you.

8          THE COURT:  Okay.  Anybody else?

9          MR. LAUFMAN:  Judge, just on behalf of Mr. Pitts, all

10  I need to say is February 21 at 4:30, please, sir.

11          THE COURT:  All right.  So the game plan will be for

12  the 21st.  We'll try to handle it either back in the jury room

13  or in my office.  If counsel senses an impasse is coming on

14  discovery issues, maybe be prepared to have something drafted

15  and filed around that time.  We won't use the 21st for a

16  formal hearing with all the clients here.  We'll use it for

17  informal discovery.  If we're reaching an impasse on the

18  issues at that date, we'll set something very quickly in terms

19  of a hearing and we'll bring the clients back.

20      Anybody have anything else we need to talk about at this

21  time?  Mr. Parker?  Mr. Oakley?

22          MR. PARKER:  No, Your Honor.

23          THE COURT:  Defense counsel, anything else you can

24  think of?  Did we -- I'm trying to think here.  Did we have a

25  motion cut-off date if anything comes up?

1        COURTROOM DEPUTY:  No, we do not.

2        THE COURT:  Well, we really can't do that until we

3  know when the discovery is going to be complete, so we'll just

4  deal with that on the 21st.

5     Tim?

6        MR. OAKLEY:  Your Honor, excuse me.  I think there is

7  a status conference scheduled tomorrow.

8        COURTROOM DEPUTY:  Right.

9        MR. OAKLEY:  Could we were consider this to be --

10        THE COURT:  Yeah.  One of the other lawyers brought

11  that up.  I don't know if it was Bryan or somebody.  We'll

12  consider this the status conference.  We'll blow off

13  tomorrow's date.  We'll see everybody --

14        COURTROOM DEPUTY:  Actually, we do have a motion

15  cut-off date.

16        THE COURT:  Oh, yeah.  We do have a motion cut-off

17  date in the order of March 21st.  I mean, that's going to be

18  our target of getting the discovery done up to that point in

19  time.  I know there will be some ongoing disclosures in terms

20  of what you guys need.  In terms of motions, I would like to

21  have all that done so they can be filed on the 21st.

22     Chris?

23        MR. JACKSON:  Judge, if  may, that February 21st

24  date, if that's just a status conference in regards to

25  problems with discovery, if I have any problems with discovery

1   and I can file a formal motion and ask the Court to consider

2   it at a later time, if you'd prefer not to set another status

3   just for me?

4           THE COURT:  Actually, are you the only person that's

5   not making the first date?

6           MR. JACKSON:  That's correct, Your Honor.  And

7   Mr. Katz is in my office.  I could talk with him.

8           THE COURT:  Why don't you see how -- you're going to

9   be out of town the 21st?

10          MR. JACKSON:  That's correct.

11          THE COURT:  Check with Mr. Katz, see how it goes.  If

12  we have to, we can just do a phone conference with one of the

13  U.S. Attorneys, and you or he can just grab ahold of them and

14  just stop up anytime.  That's fine.

15          MR. JACKSON:  I've had conversations with Mr. Parker,

16  and I think that would be no problem.

17          THE COURT:  All right.  Anybody have anything else

18  they think needs to be brought to our attention at this point

19  in time?  All right.  Good.  Let's try to get this thing

20  resolved.  I know it's a lot of material to work through.

21      I did sign some orders for investigators, didn't I?

22          COURTROOM DEPUTY:  Yes, one CJA 21 form for

23  Mr. Jackson.

24          THE COURT:  If anybody else needs help in that

25  regard, we'll do what we can.  All right.  Thanks, everybody.

1   Court will stand in recess until 11:00.

2

3     (The proceedings concluded at 10:35 a.m.)

4

5          C E R T I F I C A T E

6

7    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

8  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

9

10  S/MARYANN T. MAFFIA, RMR

11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25